175 Cal.App.4th 109 (2009)
In re Y.G., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent,
v.
Daisy C., Defendant and Appellant.
No. B210847.
Court of Appeals of California, Second District, Division Four.
June 23, 2009.
CERTIFIED FOR PARTIAL PUBLICATION[*]
*111 Kate M. Chandler, under appointment by the Court of Appeal, for Defendant and Appellant.
Raymond G. Fortner, Jr., County Counsel, James M. Owens, Assistant County Counsel, and O. Raquel Ramirez, Deputy County Counsel, for Plaintiff and Respondent.

OPINION
WILLHITE, J.

INTRODUCTION
On this appeal, Daisy C. (Mother) challenges the trial court's order adjudging her two-year-old daughter Y.G. a dependent child as described in Welfare and Institutions Code section 300, subdivision (b).[1] In relevant part, subdivision (b) permits the juvenile court to exercise jurisdiction over a child if "there is a substantial risk that the child will suffer . . . serious physical harm or illness . . . as a result of the failure or inability of . . . her parent . . . to adequately supervise or protect the child. . . ." (§ 300, subd. (b).) In this case, Department's[2] petition relied solely upon allegations that Mother had physically abused an unrelated child (Jocelyn G.), who is the same age as Y.G., to support its claim that Y.G. was at substantial risk of serious physical harm from Mother. Mother contends that the statutory language does not permit the juvenile court to consider a parent's misconduct with an unrelated child in determining a subdivision (b) allegation. We disagree and therefore affirm.

FACTUAL AND PROCEDURAL BACKGROUND
Department's section 300 petition relied upon a subdivision (b) "failure to protect" claim to assert jurisdiction. The petition alleged: "On or about 01/23/2008, . . . [Y.G.'s] mother . . . physically abused an unrelated one year old child, Jocelyn [G.], by striking the unrelated child's face, inflicting *112 bruising, swelling, and a lump to the unrelated child's face. Such physical abuse was excessive and caused the unrelated child unreasonable pain and suffering. Such physical abuse of the unrelated child by the mother endangers [Y.G.'s] physical and emotional health, safety and well-being, creates a detrimental home environment and places [Y.G.] at risk of physical harm, damage, danger and physical abuse."
At the jurisdictional hearing, Department submitted, with no objection from Mother, three reports, including photographs of Jocelyn G.'s injuries. In addition, Department presented two witnesses: a police officer and a social worker. Taken together, all of the evidence, viewed in the light most favorable to the juvenile court's order (In re S. O. (2002) 103 Cal.App.4th 453, 461 [126 Cal.Rptr.2d 554]), established the following circumstances.
Jocelyn G., then 18 months old, was injured on January 23, 2008, while under the care of Angelina T., Mother's mother. Mother was present at Angelina T.'s home that day. Jocelyn G. and Y.G. are the same age, each having been born in July 2006. When Jocelyn G.'s mother picked Jocelyn G. up from Angelina T.'s home, she saw significant swelling and bruising on the left side of her daughter's face, including a one-inch lump on the temple. Consequently, she took Jocelyn G. to the hospital. A CT scan indicated that Jocelyn G. had suffered no injuries to her brain or fractures to her skull. Photos of Jocelyn G.'s injuries were taken. The photos clearly indicate a handprint on the child's face. The police were notified because it appeared that Jocelyn G. was the victim of physical abuse.
During the subsequent investigation, both Mother and Angelina T. gave the police false explanations for Jocelyn G.'s injuries. First, they claimed that Jocelyn G. had been kicked in the head by another child under Angelina T.'s care. Then they claimed that Jocelyn G. had been injured when an unidentified assailant had tried to rob Angelina T. outside of the department of water and power (DWP) building. The police offered to administer polygraph exams. Each woman consented to and did take the exam. Angelina T.'s test results indicated that she gave truthful answers when she said that she was not responsible for Jocelyn G.'s injuries. Mother, however, gave deceptive answers to questions asking whether she inflicted the injuries. The police told Mother that she had failed the exam and that they had confirmed that her claim of a robbery outside of the DWP office was false. Mother then "admitted to making up the robbery story and hitting Jocelyn [G.] in the face. [Mother] stated that she and Jocelyn [G.] were in the bedroom when she *113 slapped Jocelyn [G.] in the face causing Jocelyn [G.] to fall off the bed. When asked why she hit Jocelyn [G.], [Mother] said she hit [her] in the face because she was crying and would not stop. After hitting [her] in the face, [Mother] stated she became worried and `freaked out' after seeing Jocelyn [G.'s] injuries." Mother then stated that "she was sorry for hitting Jocelyn [G.] and promise[d] it would never happen again." The police arrested Mother for child endangerment (Pen. Code, § 273a) and obstructing a peace officer in the discharge of his duties (Pen. Code, § 148, subd. (a)(1)).[3]
After Department began its investigation, Mother recanted her confession to the police. She said she had made the incriminating statements only because the police had threatened to take Y.G. from her if she did not confess. Mother again claimed that the source of Jocelyn G.'s injuries was either another child or the person who tried to rob her mother (Angelina T.).
At the jurisdictional hearing, Detective Marvin Jaramilla testified and denied having threatened Mother before she made her confession. In addition, Claudia Garcia, the social worker assigned to the case, testified that based upon all of the evidence, she believed Y.G. "was at risk of similar physical abuse due to the [two] children being the same age, . . . being preverbal, not of school age, and [therefore] at risk of similar physical abuse by [Mother]."
The juvenile court explicitly found that Mother's recantation of her confession and her alternate explanations for Jocelyn G.'s injuries were not credible. The court found that Mother had, in fact, inflicted the injuries on Jocelyn G. The court rejected Mother's contention that it could not consider this misconduct in determining whether it should sustain the section 300 petition.[4] The court explained:
"The . . . question is whether or not these allegations come within Welfare and Institutions Code section 300(b). And, counsel, I have read the statute very carefully and I believe I understand what the legislative intent of the legislature was and the intent to protect children when we look at these cases, and I think that it's clear to me that, despite counsel for . . . mother's argument, that this child [Y.G.] that is before the court is at substantial risk of *114 suffering serious physical harm because of what the mother did to this other child [Jocelyn G.].
". . . [The two children are] very similar in ageJocelyn [G.] and [Y.G.] . . . mother's action . . . I'm finding it to be true, that [Mother] slapped Jocelyn [G.] hard enough to cause this bruising and these marks on her faceto me that demonstrates mother's poor impulse control, and it demonstrates to me that her child [Y.G.] is at substantial risk of being injured because of her poor impulse control and her inability to properly parent her child, based upon what she has done to this other child [Jocelyn G.].
"And so I'm going to find, first of all, the injuries to be what they are and that the mother, I'm going to find, caused these injuries, and I think that the injuries come within Welfare and Institutions Code section 300(b). I'm going to sustain the petition finding by a preponderance of the evidence that (b)(1) is true."
After sustaining the petition, the trial court found by clear and convincing evidence that a substantial danger existed to Y.G.'s physical health and that there were no reasonable means to protect her without removing her from Mother's custody. The court placed Y.G. in her father's home, ordered reunification services for Mother, and directed Department to provide monitored visitation between Mother and Y.G.
This appeal by Mother follows. (§ 395.)

DISCUSSION

A. MOTHER'S CONTENTION HAS NOT BEEN FORFEITED[*]

B. SUBDIVISION (b) PERMITS CONSIDERATION OF A PARENT'S ACTIONS WITH AN UNRELATED CHILD
Section 300 provides, in pertinent part: "Any child who comes within any of the following descriptions is within the jurisdiction of the juvenile court *115 which may adjudge that person to be a dependent child of the court: [¶] . . . [¶] (b) The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of . . . her parent . . . to adequately supervise or protect the child."
In this case, there was no allegation that Y.G. had suffered any injuries as a result of Mother's actions. Instead, Department relied upon the theory that there was a substantial risk that Mother will inflict serious physical harm upon Y.G. In that regard, Department argued that Mother's previous assault upon Jocelyn G.a child who is not Y.G.'s siblingestablished that risk.
Mother does not contest the sufficiency of the evidence to sustain the trial court's finding that she did, in fact, injure Jocelyn G. Instead, Mother contends that, as a matter of statutory construction, section 300, subdivision (b) does not apply because it "omits any reference to harm done to an unrelated child." That is, Mother claims that "the risk must be created by specific acts of the parent to that specific child" for Department to rely upon a subdivision (b) allegation to assert jurisdiction.
Mother notes that other subdivisions of section 300 specifically provide that the court can consider a parent's actions with other children in determining jurisdiction. For instance, subdivision (a) permits the court to consider "a history of repeated inflictions of injuries on . . . the child's siblings" to determine whether "there is a substantial risk that the child will suffer . . . serious physical harm inflicted nonaccidentally . . ." by the parent. Similarly, subdivision (j) permits an assertion of jurisdiction if the "child's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions." Lastly, subdivision (f) provides that a child can be adjudged a dependent of the court if the child's parent "caused the death of another child through abuse or neglect." From this, Mother suggests that the Legislature's failure to include in subdivision (b) any reference to the parent's treatment of another child precludes the trial court from considering that misconduct in determining whether there is a substantial risk the child named in the petition will suffer serious physical harm as a result of the parent's failure or inability to adequately supervise or protect.
(1) Mother's argument is not persuasive. First, contrary to Mother's contention, the Legislature has expressly provided that evidence of a parent's misconduct with another child is admissible at a hearing on the section 300 *116 petition. Section 355.1, subdivision (b), provides: "Proof that either parent, the guardian, or other person who has the care or custody of a minor who is the subject of a petition filed under Section 300 has physically abused, neglected, or cruelly treated another minor shall be admissible in evidence."[5] (Italics added.) This provision is consistent with the principle that a parent's past conduct may be probative of current conditions if there is reason to believe that the conduct will continue. (See In re S. O., supra, 103 Cal.App.4th at p. 461.) Depending on the circumstances, a parent's abuse of an unrelated child may well tend to prove that the parent suffers from characteristics that also place the parent's child at substantial risk of similar abuse as a result of the parent's inability to adequately supervise or protect. Thus, the omission in section 300, subdivision (b), of any reference to conduct of the parent with an unrelated child does not mean that such conduct cannot, under any circumstances, be considered at the hearing on the section 300, subdivision (b) allegation. Section 355.1, subdivision (b), specifically provides to the contrary.
(2) Furthermore, construing subdivision (b) of section 300 to permit a finding of danger to the parent's child based on evidence of conduct with an unrelated child is consistent with the broad purpose of dependency law: "to ensure the safety, protection, and physical and emotional well-being of children who are at risk of [physical] harm." (§ 300.2; see also § 202, subd. (a).) Implementation of this purpose requires the trial court to consider a broad class of relevant evidence in deciding whether a child is at substantial risk from a parent's failure or inability to adequately protect or supervise the child. Whether evidence of particular instances of misconduct involving unrelated children is sufficiently relevant to outweigh the danger of prejudice or confusion of issues is left to an exercise of the trial court's discretion (Evid. Code, § 352). In that regard, the juvenile court can consider when the misconduct occurred, whether the unrelated child is of the same age as the child named in the section 300 petition, and the reason(s) for the misconduct. On that basis, the trial court can determine whether it is reasonably likely the misconduct will reoccur and whether that likelihood creates "a substantial risk that the [subject of the petition] will suffer . . . serious physical harm or illness . . . as a result of the failure of [the] parent . . . to adequately supervise or protect [him or her]." (§ 300, subd. (b); see also In re Dorothy I. (1984) 162 Cal.App.3d 1154, 1159 [209 Cal.Rptr. 5] [construing former § 355.5, the predecessor to § 355.1, subd. (b), to permit evidence of past misconduct because it "is essential, when available, to aid the court in dependency actions, which are concerned with the future well-being of a minor"].)

*117 DISPOSITION
The September 16, 2008 order appealed from is affirmed.
Epstein, P. J., and Manella, J., concurred.
NOTES
[*] Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part A. of the Discussion.
[1] All undesignated statutory references are to the Welfare and Institutions Code.
[2] Department refers to the Los Angeles County Department of Children and Family Services.
[3] The record does not indicate the outcome of the criminal charges. During proceedings in the juvenile court, Mother represented that her criminal defense attorney was engaged in plea bargain negotiations with the prosecutor.
[4] In the nonpublished portion of this opinion, we explain why this contention was adequately raised below so that it is preserved for appellate review.
[*] See footnote, ante, page 109.
[5] Section 355.1 is part of article 9, entitled "Dependent ChildrenHearings."