Filed 6/16/14  In re D.W. CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re D.W., a Person Coming Under the Juvenile Court Law. | |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>Emma R.,<br><br>        Defendant and Appellant. | B251890<br>(Los Angeles County<br>Super. Ct. No. DK00190) |

APPEAL from orders of the Superior Court of Los Angeles County, Philip L. Soto, Judge.  Affirmed.

Megan Turkat Schirn, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, Office of the County Counsel, James M. Owens, Assistant County Counsel and Timothy M. O'Crowley, Deputy County Counsel, for Plaintiff and Respondent.

Appellant Emma R. (Mother) appeals the juvenile court's jurisdictional and dispositional orders that found assumption of jurisdiction over her son, D.W. (D), appropriate and removed D from her care. Mother contends substantial evidence does not support the finding that her son was at substantial risk of suffering serious physical harm as a result of her failure to supervise or protect the child within the meaning of Welfare and Institutions Code section 300, subdivision (b).[1] We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 24, 2013, the car Mother was riding in with her boyfriend, Edwin M., and D was searched by police. The search uncovered a pipe with methamphetamine. Mother said it was hers and was arrested. The police left D, then eight, with Edwin and subsequently contacted the Department of Children and Family Services (DCFS). Concerned that Mother may have falsely taken the blame for drugs and paraphernalia that belonged to Edwin and that D had been left in the care of a drug user, a DCFS caseworker went to find the boy. She located him staying with Maria M., Edwin's mother, who lived in a converted garage. Maria informed the caseworker that Mother and D had moved into her residence a few days earlier because they did not have a place to stay. Maria was willing to continue to care for D, but the caseworker did not believe the garage was a suitable place for the child, whose only clothes there were the shorts and t-shirt he was wearing. D was detained and placed in foster care.[2]

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

[2] At the time, the whereabouts of the boy's father, David W., were unknown. The caseworker later determined that he was incarcerated in Colorado. He is not a party to this appeal.

After D was detained, Mother told the caseworker she had two sisters who would be willing to care for him. The caseworker contacted one, Leslie R., and learned she had a criminal history.[3] The caseworker was unable to reach the other sister, Ashley R. The caseworker also attempted to contact a maternal uncle, who did not return her calls.

Prior to the jurisdictional/dispositional hearing, the caseworker learned that Mother had been on probation since February 2013 for taking a vehicle without the owner's consent and receiving stolen property.[4] One of the conditions of her probation was that she drug test twice a month. Another condition was that she not be in a place or vehicle where drugs were present or in the presence of anyone using drugs. She had tested positive for methamphetamine in April 2013, and was referred to a substance abuse program.

Interviewed by the caseworker, Mother admitting having a "history" of methamphetamine use, but said that she had been clean "recently." She told the caseworker that the pipe with methamphetamine found in the console of her friend's car was not hers, and that she had claimed ownership because otherwise both she and Edwin would have been arrested. She confirmed that as a result of her positive drug test in April, she was attending a program that provided drug rehabilitation and therapy. She said she had been previously incarcerated for a lengthy period, and had sent D to live with his maternal grandparents in Mexico.[5]

---

3    The caseworker subsequently provided Leslie a waiver packet so that she could be considered for placement.

4    Mother also had a 2004 conviction for possession of a controlled substance, a 2008 conviction for theft, and 2005, 2011 and 2012 convictions for possession of drug paraphernalia.

5    The maternal grandparents stated they were willing to take custody of D, but when asked how they would support him, inquired whether funds would be available through DCFS. Told that funds would be available only for a placement in the United States, they
*(Fn. continued on next page.)*

She also said she had sent D to live with her parents at other times, when he was "'too much for [her].'"

D was also interviewed. He had no obvious signs of abuse or neglect. He told the caseworker he was on summer break from school. He claimed to have no knowledge of methamphetamine or how it was consumed. He said he wanted to be returned to Mother.

Mother was released from custody on August 11, 2013, one month before the September 17 jurisdictional/dispositional hearing. Mother did not appear at the hearing. Counsel for Mother argued that substantial evidence did not support jurisdiction because there was no evidence establishing where the methamphetamine was found and whether it was accessible to D. Counsel further argued that Mother's criminal history and arrest could not support jurisdiction because she had made an appropriate plan for the child's care.

The court found by a preponderance of the evidence that Mother had placed D in a dangerous situation by possessing methamphetamine and a drug pipe accessible to the child in the vehicle in which he was a passenger. The court further found that Mother had been arrested in July 2013 and had a criminal history of three convictions for possession of drug paraphernalia. According to the court, these "detrimental and . . . endangering" situations "endanger[ed] the child's physical health and safety and place[d] the child at risk of physical harm, damage and danger" within the meaning of section 300, subdivision (b).

Turning to disposition, the court found there were no reasonable means to protect the minor without removal from Mother's custody. The court ordered the following reunification services for Mother: parenting classes, drug and alcohol

---

suggested the caseworker contact other relatives. When D had lived with them in the past, he had fallen behind in school due to the language difference.

services, including a drug program, drug testing, and a 12-step program, and individual counseling to address case issues. Mother appealed the jurisdictional and dispositional orders.

**DISCUSSION**

A. *Jurisdiction*

In order to assert jurisdiction over a minor, the juvenile court must find that he or she falls within one or more of the categories specified in section 300. (*In re Veronica G*. (2007) 157 Cal.App.4th 179, 185.) DCFS bears the burden of proving by a preponderance of the evidence that the minor comes under the juvenile court's jurisdiction. (*Ibid*.) "We review the juvenile court's jurisdictional findings for sufficiency of the evidence. [Citations.] We review the record to determine whether there is any substantial evidence to support the juvenile court's conclusions, and we resolve all conflicts and make all reasonable inferences from the evidence to uphold the court's orders, if possible. [Citation.]" (*In re David M*. (2005) 134 Cal.App.4th 822, 828.) "We do not pass on the credibility of witnesses, attempt to resolve conflicts in the evidence or weigh the evidence." (*In re James R*. (2009) 176 Cal.App.4th 129, 135.)

Section 300, subdivision (b) permits the court to adjudge a child a dependent of the juvenile court where: "The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's . . . substance abuse." A true finding under subdivision (b) requires proof of: "(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) 'serious physical harm or illness' to the minor, or a 'substantial risk' of such harm or illness." (*In re Rocco M*. (1991) 1

5

Cal.App.4th 814, 820.) "The third element 'effectively requires a showing that at the time of the jurisdictional hearing the child is at substantial risk of serious physical harm in the future . . . .'" (*In re James R.*, *supra*, 176 Cal.App.4th at p. 135, quoting *In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1396.)

Mother contends that to the extent the court's jurisdictional finding was based on her inability to care for her son due to her arrest and incarceration, substantial evidence did not support the finding because she set up a plan for appropriate care for D both in July 2013 and during her previous incarceration; in any event, she was no longer incarcerated by the time of the jurisdictional hearing. She contends jurisdiction is not appropriate where an incarcerated parent has made appropriate plans for child care. Mother overlooks that in the cases on which she relies -- *In re S.D.* (2002) 99 Cal.App.4th 1068 and *In re Noe F.* (2013) 213 Cal.App.4th 358 -- the parents' proposed caregivers were willing to assume responsibility for the child and were found to be suitable custodians by the court. (*In re S.D.*, *supra*, at pp. 1077-1079; *In re Noe F.*, *supra*, at pp. 365-366.) Here, two proposed caregivers -- maternal aunt Ashley R. and the maternal uncle -- did not return the caseworker's calls. Maternal aunt Leslie R. had a criminal history. The caseworker was working with her to obtain a waiver, but it had not been obtained by the time of the jurisdictional hearing. The maternal grandparents required financial support that was unavailable because they did not live in the United States and were unable to ensure that the boy would obtain appropriate schooling. Maria, a non-relative with whom D had stayed only a few days, lived in unsuitable housing and had no clothing for the child.

Moreover, the court's jurisdictional finding was based not only on Mother's inability to provide care during her incarceration, but also on her conduct in leaving drugs and drug paraphernalia in places accessible to D. A pipe with methamphetamine was found in the console of the car in which she and D were

6

riding. Mother told police officers it was hers; the court was not required to credit her later denial, particularly in light of her lengthy history of drug use. Leaving dangerous drugs in a place accessible to a young child poses a risk of serious harm that supports the assertion of jurisdiction. (See *In re Rocco M., supra,* 1 Cal.App.4th at p. 826 [jurisdiction supported by parent's creation of home environment providing child with means and opportunity to begin abusing drugs himself]; cf. *In re W.O.* (1979) 88 Cal.App.3d 906, 910-911 [jurisdiction not supported where cocaine and marijuana found in places not readily accessible to the children].) Thus, there was substantial evidence that Mother's conduct and failure to provide appropriate care due to her drug use posed a serious risk of harm to D in the future within the meaning of section 300, subdivision (b).

B. *Disposition*

After finding that a child is a person described in one of the subdivisions of section 300 and therefore the proper subject of dependency jurisdiction, the court must determine "the proper disposition to be made of the child." (§ 358.) "A dependent child may not be taken from the physical custody of his or her parents . . . with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence . . . [¶] . . .[that] [t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (§ 361, subd. (c)(1).) To support its dispositional order removing custody from a parent, the court may consider "a broad class of relevant evidence in deciding whether a child is at substantial risk from a parent's failure or inability to adequately protect or supervise the child" (*In re Y.G.* (2009) 175 Cal.App.4th 109,

7

116), including "the parent's past conduct as well as present circumstances." (*In re Cole C.* (2009) 174 Cal.App.4th 900, 917.) "The . . . child need not have been actually harmed for removal to be appropriate. The focus of the statute is on averting harm to the child." (*Ibid.*; accord, *In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1656-1658.) On review of the court's dispositional findings, "we employ the substantial evidence test, however bearing in mind the heightened burden of proof." (*In re Kristin H., supra,* at p. 1654.)

The same evidence that supports the court's jurisdictional finding supports its decision to remove D from Mother's custody. In determining whether the boy was at risk if returned to Mother's care, the court could consider the evidence that Mother had a long history of drug abuse reflected in her repeated convictions for possession of drugs or drug paraphernalia beginning in 2004. She admitted a history of drug abuse and claimed no "recent" use. However, the record reflects that although her current probation conditions required her to stay away from drugs and drug users, a mere three months prior to the detention, she tested positive for methamphetamine. Mother contends that parental drug use alone cannot support jurisdiction. (See *In re Drake M.* (2012) 211 Cal.App.4th 754, 768; *In re Destiny S.* (2012) 210 Cal.App.4th 999, 1003.) However, this is not a situation where the child was being well cared for despite the parent's drug use. Mother and D were essentially homeless. D had fallen behind at school. When the caseworker detained the boy, he was being cared for by a woman he barely knew and had nothing to wear except the clothes on his back. The court could reasonably conclude that D would not be safe in Mother's care until her long-term drug problem was addressed. (See *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1219 [where child is of tender years, "'the finding of substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of harm'"].)

8

## DISPOSITION

The jurisdictional and dispositional orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MANELLA, J.


We concur:


EPSTEIN, P. J.


WILLHITE, J.