Filed 8/26/22 In re J.N. CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

|  |  |
|---|---|
| In re J.N. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. J.N., Defendant and Appellant. | E078412 (Super.Ct.Nos. J289255-60) OPINION |

APPEAL from the Superior Court of San Bernardino County. Steven A. Mapes, Judge. Affirmed.

William D. Caldwell, under appointment by the Court of Appeal, for Defendant and Appellant.

1

Tom Bunton, County Counsel and Svetlana Kauper, Deputy County Counsel, for Plaintiff and Respondent.

Father J.N., Sr., appeals a jurisdictional and dispositional judgment declaring his six children to be dependents due to his physical abuse, substance abuse and failure to protect.[1] Father was captured on a cell phone video beating his then 7-year old son, C.N., by kicking, hitting, and striking the child in the head with a steel toed boot, resulting in dependency proceedings instituted by the San Bernardino County Children and Family Services Agency (CFS). An investigation revealed that father had physically abused seven of the eight children in the household, and that mother had corporally punished two of them, culminating in allegations the children came within Welfare and Institutions Code,[2] section 300, subdivisions (a), (b), and (j).[3] At the hearing on the petition, father objected generally, but specifically argued against the true findings on an allegation he abused substances. The court declared the children dependents, removed custody from the parents, and ordered Family Reunification Services. Father appeals.

---

[1] Mother, M.G., did not appeal. We will refer to her where necessary to provide a complete history.

[2] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[3] Of the eight children in the household, the two older children were not biologically related to father, and this appeal does not include a record relating to their status as dependents, other than information included in social services agency reports. Because the two older children had different fathers, who did not respond to the filing of the petition affecting their children, there was an additional allegation pursuant to section 300, subdivision (g) (parent failing to make provision for support of child), as to those children.

On appeal, father challenges the sufficiency of the evidence to support jurisdictional findings (1) under section 300, subdivision (a), as to three of the children, and (2) the jurisdictional finding of substance abuse; as well as (3) the dispositional judgment removing custody. In a supplemental opening brief, father argues the juvenile court erred by not designating him as presumed father as to the two older children. We affirm.

## BACKGROUND

On May 19, 2021, J.N. Sr., father, repeatedly hit and kicked son C.N, then 7 years of age, and threw a steel toed boot at the child, causing a bump and small laceration on the child's head. Mother's cousin, M.R., who was present to help with child care, recorded a video of a portion of the beating on her cell phone and sent the video to her sister, who called police. Mother, who was working, was contacted and returned to the home, where father was arrested for corporal injury to a child and (Pen. Code, § 273d, subd. (a)) and mother was arrested for child endangerment. (Pen. Code, § 273a, subd. (b).)

There were eight children in the household, but of those children, J.N., Sr., was father of the six younger children, ranging in age from 4 months to 8 years in age.[4] Investigation revealed that every one of the children had been physically abused by father, with the lone exception of the child L.A-G., whom father favored. In addition to striking them with his hands, feet, and shoes, he would use a belt, leaving marks on the

---

[4] Two older children were mother's daughters from prior relationships, A.S., age 13, and L.A-G., age 9.

children and called them derogatory names. He once struck A.S. with a broom, on another occasion he hit her on the thigh with a water hose, and has thrown things at her. C.N. also described an incident in which father injured A.S.'s hand, breaking her pinky finger, for which no medical attention was sought.[5]

In addition, there had been incidents of domestic violence, which left bruises on mother. The most serious incident occurred while mother was pregnant with the twins (the youngest children),[6] in which father pushed her onto the ground, pulled her hair and hit her all over her body. The children all indicated mother tried to intervene when father abused them. However, he would get even angrier when she tried to protect them, making her fearful of him.

Although mother's cousin and none of the children had actually seen father use drugs, the children had heard mother discuss his drug use, L.A-G had seen him receiving a small, clear bag with "white things in it," and mother's cousin indicated father would occasionally take the children with him to visit a friend, where he would leave the children in the car and return in 30 minutes behaving strangely. The family suspected father was doing drugs because his personality and behavior changed radically beginning three years previously, which coincided with the domestic violence episodes beginning, and one of father's friends confirmed he was using methamphetamine.

---

[5] After CFS intervened, A.S. was examined by a doctor who reported right hand asymmetry at the MCP joint of the little finger, described as "R little finger clinodactyly."

[6] Because the twins were four months of age at the time of the current incident, this episode of domestic violence likely occurred a few months before their birth, depending on whether they were born at full term.

4

On May 21, 2021, CFS filed an original dependency petition alleging physical abuse (§ 300, subd. (a)), risk of abuse (§ 300, subds. (a) and (b)(1)), failure to supervise or protect (§ 300, subd. (b)(1)), leaving the children without making provisions for their support (§ 300, subd. (g)), and abuse of siblings (§ 300, subd. (j)). Respecting the allegations under section 300, subdivision (b)(1), the petition alleged that the abuse of certain of the children places all the children at risk, that mother knew or should have known of the physical abuse by father but failed to protect the children, that father has a substance abuse problem with methamphetamine and/or cocaine that placed the children at risk, that mother knew of father's substance use but failed to protect the children, and that the parents engaged in domestic violence, posing a risk to the children.

At the detention hearing, the children were removed and temporarily detained following the parents' denial of the petition. Father, who appeared through counsel due to his custodial status and the Covid-19 restrictions in place, was ordered to submit to a drug test. The court also authorized forensic interviews of the verbal children by the Children's Assessment Center (CAC).

The jurisdiction report provided information obtained during an interview with mother. The social worker indicated in the report that mother has had four significant relationships but no marriages and has given birth to nine children, eight of whom were the subject of the current intervention. The social worker informed the court in the report that father is the presumed father of six of the children: C.N., K.N., G.N., Ju. N., Ja.N.,

5

and Je.N. The man named on the birth certificate of A.S. was P.S., but he was not actually her father. J.A-G. was named as the alleged father of L.A-G.

On June 28, 2021, the jurisdiction hearing was continued pending receipt of the CAC interview reports and to allow the social worker to interview father. On August 27, 2021, CFS submitted the results of the CAC interviews in an Additional Information to the court supplemental report. The reports indicated A.S., L.A-G., and K.N. had been physically abused by mother. On August 30, 2021, a first amended petition was filed. The amended petition added allegations of physical abuse by mother respecting those children and the risk posed by that abuse to the other children, along with allegations that father failed to protect the children from mother's conduct. Father requested paternity testing of himself and the six younger children.

On August 30, 2021, the parents denied the allegations of the amended petition. However, while the children submitted DNA samples for testing in due course, father never did. On October 25, 2021, the social worker submitted an additional information to the court recommending that father not be designated presumed father of the two oldest children, A.S. and L.A-G., because he was not their biological father, had not adopted them, and because he had abused them. The jurisdiction hearing set for that day was continued after the mother set the matter as a contested hearing, and father joined in that request. Father also withdrew his request for paternity testing of his children.

On January 13, 2022, the social worker submitted an additional information supplemental report to the court indicating that mother had not completed any

predispositional services and that while father had two negative drug tests, he had missed seven drug tests, and had not completed any services, citing his work schedule.[7]  He had also been terminated from individual counseling for failing to show up.  However, his visits with the children were more consistent than mother's and he interacted with them, making the most of his two-hour visitation time.  Nevertheless, neither parent had made progress in services causing the social worker to consider reunification to be unlikely.

On January 18, 2022, the contested combined jurisdiction and disposition hearing took place.  All of the social worker's reports and addenda were received into evidence without objection.  County counsel argued against a finding that father was presumed father as to A.S. and L.A-G., citing the decision in the case of *In re T.R.* (2005) 132 Cal.App.4th 1202.  The court provisionally denied father presumed status based on the arguments made on behalf of CFS, subject to father proving otherwise.  Father did not proffer any additional evidence to support a presumed father finding aside from argument by his counsel that he has been in their lives taking care of them, lived with them, and held them out as his own.[8]  The court found he was not the father and did not qualify as the presumed father of the two older girls.  However, in accordance with the social

---

[7] There is no information in the record about his employment status or schedule aside from the references to father's inability to appear for drug testing.  By history, mother indicated father had a very poor record of employment and he did not like to work.  Father was in custody at least through June 28, 2021, according to minute orders reflecting his custodial status.

[8] It should be noted that at the jurisdiction-disposition hearing, CFS filed a second amended petition adding allegations pertaining to A.S. and L.A-G., which are not part of this record on appeal because their cases were not appealed.

worker's recommendation, father was found to be the presumed father of the six younger children.

As to the remaining issues, aside from father's counsel's general objection to the petition, his only argument was posited against a true finding on the allegations of substance abuse. On this allegation, father argued there was insufficient evidence because there were no statements that anyone saw him using drugs, and the fact no drugs were found in the home, although counsel acknowledged father had missed tests. As to the remaining grounds for jurisdiction, father did not offer any specific argument for the insufficiency of the evidence.[9]

After all counsel argued, the court made true findings on all allegations, declared the children dependents and removed custody of the children from both parents. The court found father was the presumed father of the six younger children and ordered the parents to participate in Family Reunification Services.

Father appealed from the judgment affecting the six younger children.

---

[9] Father initially argued against a true finding on the section 300, subdivision (g) allegations, noting that they had been alleged because he was in custody at the inception of the dependency, but he noted father was no longer in custody at the time of the hearing. In response, the court noted there were no longer any subdivision (g) allegations pending against father.

8

*1.     Father Failed to Appeal from the Denial of Presumed Father Status as to A.S. and L.D.*

In a supplemental opening brief, father argues the court erred in denying him status as a presumed father of A.S. and L.A-G. CFS argues the lack of appellate jurisdiction bars review of the findings because father failed to timely appeal from the judgments affecting these two oldest children. We agree with CFS.

a.     *Background*

On June 28, 2021, at the initially scheduled jurisdictional hearing, father requested presumed father status as to A.S. and L.A-G. The jurisdictional/dispositional reports, however, reflect that father was not related to the two older girls, although he was apparently fond of saying that L.A-G. was his first born daughter. The social worker recommended that father be declared presumed father of his six biological children in the original jurisdiction-disposition report. But because the father was not married to mother and had not adopted the two older children, A.S. and L.A.-G., and because of his physical abuse of A.S. and her siblings, the social worker recommended that father not be designated presumed father of the two oldest children in the Additional Information to the Court report submitted on October 21, 2021.

At the contested jurisdiction and disposition hearing, the juvenile court declined to recognize father as presumed father of the two oldest girls. Father urges reversal of this finding. CFS argues that father failed to preserve this issue by not appealing that finding.

9

We agree. All of the children had separate case numbers and father referred only to the cases involving his biological children in the notice of appeal. He also named them specifically on the form. He did not appeal from the ruling affecting the two older children.

b. *Discussion*

"'[N]otices of appeal are to be liberally construed so as to protect the right of appeal if it is reasonably clear what the appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced.' [Citations.]" (*In re Joshua S.* (2007) 41 Cal.4th 261, 272.) A notice of appeal "is sufficient if it identifies the particular judgment or order being appealed." (Cal. Rules of Court, rule 8.100(a)(2).) Thus, on appeal from a disposition judgment, a party may challenge findings made at the jurisdiction hearing, and vice versa. (*In re J.F.* (2019) 39 Cal.App.5th 70, 75-76, citing *In re Daniel Z.* (1992) 10 Cal.App.4th 1009, 1017.) Further, on appeal from a judgment terminating parental rights, a parent may challenge a ruling on a section 388 petition heard in the same proceeding or earlier hearing, even if not designated in the notice of appeal, providing the notice of appeal is filed within 60 days of the order on the section 388 petition. (*In re Madison W.* (2006) 141 Cal.App.4th 1447, 1450.)

"Once a notice of appeal is timely filed, the liberal construction requirement compels a reviewing court to evaluate whether the notice, despite any technical defect, nonetheless served its basic function—to provide notice of who is seeking review of what

10

order or judgment—so as to properly invoke appellate jurisdiction." (*K.J. v. Los Angeles Unified School Dist.* (2020) 8 Cal.5th 875, 883.)

Here, father's notice of appeal does not identify the particular judgment or order being appealed, but he refers to the order by date of the dispositional judgment and specifically names his six biological children as the subjects of the appeal. Each child had a separate Juvenile Court case number[10], and the policy of liberal interpretation permits us to review all orders made on the date indicated for the named children (despite the failure to name them on the first page of the notice of appeal where father described the judgment subject to appeal or to list their case numbers).

However, father's failure to name the two nonbiologically related children cannot be cured in the same manner as an appeal that is defective for failing to include all the orders being appealed from proceeding heard or concluded on a particular date because their cases were separate, and he did not name them in the notice of appeal. The jurisdiction and dispositional judgments as to the two older girls is final, and because no notice of appeal was filed in their cases, the judgments are now final and the record on appeal includes none of the minute orders pertaining to the non-biological children.

The notice of appeal is jurisdictional and a timely notice of appeal vests jurisdiction in the Court of Appeal. (*Adoption of Alexander S.* (1988) 44 Cal.3d 857, 864,

---

[10] Separate dependency petitions were filed as to each child. The respective case numbers for each of the children are reflected in the separate minute orders commencing with the initial detention hearing. Ja.N.'s case number was J289255; Je.N.'s case number was J289256; Ju.N.'s case number was J289257; G.N.'s case number was J289258; K.N.'s case number was J289259; C.N.'s case number was J289260; L.A.-G.'s case number was J289261; and A.S.'s case number was J289262.

11

citing *Estate of Hanley* (1943) 23 Cal.2d 120, 122.) Although recently the California Supreme Court has carved out an exception to this rule in situations where a late filing of the notice of appeal is due to ineffective assistance of counsel in failing to timely file a notice of appeal at the parent's request (see *In re A.R.* (2021) 11 Cal.5th 234), in the present case counsel did timely file a notice of appeal, naming each of the children of whom father was declared presumed father. The record does not reflect any information from which we could assume father intended to appeal the judgments in the cases involving the older children who were half-siblings of father's six children, so we cannot assume counsel was ineffective. It is for this reason that such issues are usually raised in a timely petition for writ of habeas corpus. (*Id.* at pp. 254-255.)

In *A.R.,* counsel negligently filed the notice of appeal four days late. (*A.R., supra,* 11 Cal.5th at p. 244.) The Supreme Court concluded it was unduly harsh to dismiss the appeal of a parent to whom the untimeliness was not attributable. (*Id.,* at p. 249.) There, the Supreme Court reaffirmed its commitment to expeditious resolution of dependency cases. (*Id.,* at pp. 249, 253.) Parents must therefore make a timely application for relief. (*Id.,* at pp. 249-250.)

In the present case, the judgment was entered in January 2022 and no notice of appeal was attempted to be filed even as of the date father filed his supplemental opening brief addressing the denial of his presumed father status in the sibling cases of A.S. and L.A.-G., and beyond that to the date he filed his reply brief. Nor has father attempted to seek relief from the failure to file a notice of appeal.

Because we cannot presume that trial counsel was incompetent in failing to file a notice of appeal in the cases of the older children the result is that the judgments as to the older children are now final.

CFS alternatively argues that father failed to establish, by a preponderance of the evidence, the facts supporting his entitlement to presumed father status including whether it would be in the children's best interests. (*In re T.R.*, *supra*, 132 Cal.App.4th at p. 1210, citing *In re Spencer W.* (1996) 48 Cal.App.4th 1647, 1653.) In *T.R.,* the father did not come into the child's life until the child was three years of age, but after that, he held the child out as his own, which the court found to be a positive factor. (*T.R., supra,* at p. 1211.) However, the reviewing court stated the positive factors could not be viewed in a vacuum, noting that father's prior conduct and his history of molesting other children "was antithetical to a parent's role and was a blatant violation of parental responsibilities" that more than counterbalanced the factors favoring his presumed father status, in affirming the juvenile court's finding. (*In re T.R., supra,* at pp. 1211-1212.)

There is a seductive appeal to the streamlined approach taken in *In re T.R.,* but it would create a significant risk to the rights of the parents, children and relatives by permitting a court to find a father ineligible for reunification services, relative placement options, among other things, based on the vague basis that his conduct is antithetical to a parent's role and in violation of parental responsibility, which are not criteria found in Family Code section 7611.

13

We decline to reach this question and we do not need to reach it because father failed to perfect an appeal from the orders affecting A.S. and L.A-G. This failure is jurisdictional.

2. *Substantial Evidence Supports the True Findings on All Allegations*.

Father challenges the true findings as to allegations pertaining to K.N., Ju.N., Ja.N. and Je.N. because the videotaped incident involving C.N. and prior incidents of abuse did not demonstrate they were at risk of abuse. He argues the erroneous findings and declaration of dependency as to these children affected the decision to remove all the children from his custody as well as the nature of the reunification services ordered. We disagree.

Although he asserts he objected to all the allegations against him, father did not object to the social worker's reports or offer testimony or other evidence on his behalf to refute the information in the reports. Absent an objection to specific hearsay in the report by father, those reports may be sufficient to support jurisdictional findings. (*In re Lucero L.* (2000) 22 Cal.4th 1227, 1242; see also § 355, subd. (a).) He preserved only the right to challenge the sufficiency of the evidence to support the jurisdictional findings. (*In re Richard K.* (1994) 25 Cal.App.4th 580, 588-589 [submission on the social worker's recommendations waives any challenge to disposition where submission on the reports does not]; *In re Tommy E.* (1992) 7 Cal.App.4th 1234, 1237-1238.)

We therefore review the true findings on the statutory bases for jurisdiction for substantial evidence. (*In re K.S.* (2016) 244 Cal.App.4th 327, 337, citing *In re Rocco M.*

14

(1991) 1 Cal.App.4th 814, 820 [disapproved on a different point in *In re R.T.* (2017) 3 Cal.5th 622, 629],see also, *In re David M.* (2005) 134 Cal.App.4th 822, citing *In re Heather A.* (1996) 52 Cal.App.4th 183, 193.) In conducting our review of the record, we resolve all conflicts and make all reasonable inferences from the evidence to uphold the court's orders, if possible. (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393.) "Additionally, we may not substitute our deductions for those of the trier of fact." (*In re Albert T.* (2006) 144 Cal.App.4th 207, 216.)

Because father did not testify or call any witnesses, we may look only to the social worker's reports to determine if there is substantial evidence to support the jurisdiction findings. In submitting on reports, "the parent acquiesces as to the state of the evidence yet preserves the right to challenge it as insufficient to support a particular legal conclusion." (*In re Richard K., supra,* 25 Cal.App.4th at p. 589, citing *In re Tommy E., supra,* 7 Cal.App.4th at p. 1237.) Jurisdiction findings may be made by a preponderance of the evidence.[11] (§ 355, subd. (a).) We therefore accept as proven the unrefuted information contained in the social worker's reports which were admitted into evidence and our job is to determine if the information provided therein supports the true findings to support jurisdiction.

---

[11] The reporter's transcript of the jurisdictional findings does not indicate what standard of proof the court applied in making its findings. We note the court stated it was following the social worker's recommendations as to the findings, but the social worker's recommendations are silent as to the standard of proof the juvenile court should apply. It would be helpful if the court would indicate the standard of proof used in making findings to aid our review.

Turning to his arguments on appeal, father argues that his abuse of A.S., C.N., and G.N., does not sufficiently demonstrate that the youngest children were at substantial risk. We disagree. First, the evidence shows that father did beat K.N. with a belt and that only L.A.-G., and the infant twins were spared father's physical abuse. So we need only determine if the reports support jurisdiction findings as to Ja.N. and Je.N., since L.A.-G.'s case is not before us.

In conducting our review, we follow certain additional principles. "'When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence.'" (*In re D.P.* (2014) 225 Cal.App.4th 898, 902, quoting *In re Alexis E*. (2009) 171 Cal.App.4th 438, 451; see also, *In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763.) "'In such a case, the reviewing court does not need to consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.'" (*Drake M., supra,* at p. 762, citing *In re Alexis E., supra,* 171 Cal.App.4th at p. 451.)

"However, [a reviewing court] generally will exercise our discretion and reach the merits of a challenge to any jurisdictional finding when the finding (1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) 'could have other consequences for [the appellant] beyond

16

jurisdiction.' [Citation.]" (*Drake M., supra,* 211 Cal.App.4th at pp. 762-763.) We review each ground.

        a.        *Section 300, subdivision (a)—Physical Abuse or Substantial Risk of Abuse*

Father argues that the fact he physically abused some of his children does not justify a finding under section 300, subdivision (a) that the youngest children were at risk of physical abuse. We disagree.

As to the allegation of physical abuse pursuant to section 300, subdivision (a), an allegation that a child has suffered serious physical harm inflicted non-accidentally by a parent or guardian is sufficient to establish jurisdiction under that section. Further, "[p]roof that either parent, the guardian, or other person who has the care or custody of a minor who is the subject of a petition filed under Section 300 has physically abused, neglected, or cruelly treated another minor shall be admissible in evidence." (§ 355.1, subd. (b).) Such proof is sufficient to establish jurisdiction under section 300, subdivision (a) as to other related and unrelated children in the home. (*In re Marquis H.* (2013) 212 Cal.App.4th 718, 725-726.) "This provision [of section 355.1] is consistent with the principle that a parent's past conduct may be probative of current conditions if there is reason to believe that the conduct will continue." (*In re Y.G.* (2009) 175 Cal.App.4th 109, 116.)

These principles apply to the present case: father has, in the past, inflicted serious physical harm on all of his children except the infant twins, on multiple occasions. This past conduct is probative of the current risk to the youngest children, who may be

properly considered to be at risk of serious physical harm under section 300, subdivision (a).

Here, father has struck A.S., C.N., and K.N., has pulled the hair of A.S. and K.N. so hard it left red marks and made the children cry, has struck C.N., G.N., K.N., and A.S. with a belt leaving marks, has struck A.S. with a broom stick and water hose, and caused permanent injury to her hand. Father argues his conduct was age-appropriate discipline, which does not give rise to jurisdiction under the Juvenile Court Law.

We agree that age-appropriate discipline does not warrant juvenile court intervention. (*In re D.M.* (2015) 242 Cal.App.4th 634, 640; see also, *In re Isabella F.* (2014) 226 128, 138.) "'Serious physical harm' does not include reasonable and age-appropriate spanking to the buttocks where there is no evidence of serious physical injury." (§ 300, subd. (a); *In re D.M.*, *supra*, at p. 640.) However, father's abuse left bruises, welts, bumps, a laceration to C.N.'s head and an improperly healed finger or hand fracture on A.S. This was excessive and supports the jurisdictional findings as to those children, including the infants, where section 355.1 permitted the court to find that father's physical abuse of the older children placed the younger children at risk of similar harm, pursuant to section 300, subdivision (a).

Moreover, given that the children were present when he engaged in physical abuse, which included throwing objects at the children, the court could properly assume that an object thrown at one of the older children could strike a younger child, bringing

18

all of the children within the definition of a dependent child under section 300, subdivision (a).

"[S]ection 300 does not require that a child actually be abused or neglected before the juvenile court can assume jurisdiction." (*In re I.J.* (2013) 56 Cal.4th 766, 773; *In re Yolanda L.* (2017) 7 Cal.App.5th 987, 993.) In determining whether the parent's conduct is likely to recur in the future, courts may consider evidence of the parent's past conduct which, as we have explained, establishes a significant history of physical abuse of the children as well as domestic violence on father's part. (See *In re N.M.* (2011) 197 Cal.App.4th 159, 165.) The legislative purpose of section 300 is to provide maximum safety and protection for children who are currently being abused, neglected, or exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm. (§ 300.2; *In re I.J., supra*, at p. 773.)

Thus, while actual abuse can be a basis for exercising jurisdiction, it is by no means requisite when there is evidence of substantial risk. (*In re T.V.* (2013) 217 Cal.App.4th 126, 134, citing *In re I.J., supra*, 56 Cal.4th at p. 773.) Father's abuse of several of the children exposed the other children to risk of abuse, given his limited tolerance for children's disruptive behavior. The children were also at risk because mother had abused some of the children and father failed to protect them, posing a risk to all the children. This evidence amply supports the true findings under section 300, subdivision (a), against father as to all the children.

Finally, even if it could be said there was insufficient evidence to make true findings as to Ja.N. and Je.N. under section 300, subdivision (a), the same conduct was properly pled under section 300, subdivision (j), which father has not challenged on appeal. Thus, a reversal of specific allegations of physical abuse of Ja.N. and Je.N. would not affect the disposition.

Before we leave this issue, we feel compelled to address father's attempts to minimize his conduct and the risk of harm by arguing that his abuse of A.S. and C.N. was attributable to circumstances unique to them, due to their diagnoses as suffering from ADHD, as if that would excuse or mitigate his serious physical abuse. This argument does not deserve traction on appeal, and we decline to accept this type of rationale for violent behavior because it implies that children with behavior problems are not entitled to protection against harm by their parents. There is no "the child made me do it" excuse for physical abuse.

We also reject it because it ignores the reality that when father throws steel-toed boots or other objects within his reach at one child, there is the very substantial risk that the projectile will hit a child other than his intended target. It also ignores the fact he told the police that all the children except one were disobedient and had bad tempers, suggesting he could easily rationalize excessive discipline respecting all of them. There is no "disobedient child defense" to physical abuse.

While the Juvenile Court Law recognizes that certain disciplinary measures, age-appropriate discipline, are reasonable and will not result in a dependency, father's

20

behavior went far beyond a spanking, including, in addition to the infliction of physical harm with various household implements, yelling inappropriate derogatory terms at the children. Father's behavior cannot be condoned because children are disobedient and we will not go there. There is substantial evidence to support the true findings that Ja.N. and Je.N. are at risk of serious physical harm under section 300, subdivision (a).

b. *Section 300, subdivision (b)(1) – Failure to Protect*

Father argues there is insufficient evidence to support the jurisdictional finding that he failed to protect the children A.S., L.A.-G. and K.N. from mother's physical abuse. We disagree. We do not need to address the sufficiency of evidence as it pertains to A.S. and L.A.-G. because they are not part of this appeal. As to K.N., father argues that "[t]he child failed to explain *when* the hitting occurred, whether it occurred on only *one* occasion, and most importantly whether Father *saw* the hitting or otherwise should of [*sic*] been aware that it happened."

As with other grounds for jurisdiction, we review for substantial evidence and are bound to accept as true the matters stated in the social worker's reports, which were admitted into evidence without objection. Father points to no evidence in the record showing that mother did not physically abuse the children, and mother did not challenge the jurisdictional allegations against her at the hearing, so we assume that the allegations supporting a finding that mother abused the three children are supported by substantial evidence.

Additionally, the evidence showed that father and mother engaged in domestic violence, which mother minimized but which included father's severe abuse of mother while she was pregnant with the twins, Ja.N. and Je.N. "Exposure to domestic violence may serve as the basis of a jurisdictional finding under section 300, subdivision (b)." (*In re R.C.* (2012) 210 Cal.App.4th 930, 941.)

Regarding father's failure to protect K.N., the evidence in the reports shows that at least until the date of his arrest, father was not employed; he remained at home, either "being helpful in taking care of the children" while mother worked, or watching movies with the children, or staying in the bedroom. The conclusion is inescapable that he either knew or should have known of mother's abuse, after all, he apparently took the children with him when he left the house. Father waived his opportunity to testify and did not object to the evidence submitted by CFS, which supports jurisdiction. The record demonstrates father was present so the court drew a logical inference that he either knew or should have known of the abuse committed by mother and failed to protect the children, absent evidence to the contrary.

There is substantial evidence to support the finding on the failure to protect allegations.

c.      *Section 300, subdivision (b)(1) - Substance Abuse*

Father's domestic abuse involving mother and his physical abuse of the children seem to have begun approximately three years before the incident that resulted in CFS intervention, and his change in behavior was attributed to suspected drug use. Father

22

argued at the jurisdiction hearing that the allegation could not stand because no one had ever seen him doing drugs and no drugs were found in the home. On appeal, he complains that the evidence in the reports indicated the older children "heard" mother talk about father doing drugs, the "suspicion" that he was doing drugs due to the changes in his behavior and personality, and A.S.'s statements about father staying up all night, sleeping during the day, and having high energy, is too speculative to support the true findings on these allegations.

The information pertaining to the allegations was contained in the social worker's reports, which father agreed could be admitted into evidence and considered by the court. Father did not make any hearsay or other objections to the reports. Absent an objection, the social worker's reports were properly considered by the trial court.

Reviewing the entire record to determine if the information in the reports about suspected substance abuse is sufficient to support the true finding on that allegation, our review of the sufficiency of the evidence is limited to reviewing that evidence to determine if they support true findings that the children are persons described in section 300, subdivision (b)(1) due to substance abuse.

Here, the reports reveal that M.R., mother's cousin and caretaker of the children due to father's shortcomings in this regard, informed the social worker that while she had not seen father use drugs in her presence, "however, he always ask [*sic*] about buying cocaine when she been [*sic*] around him and it has been stated that he uses crystal meth." In addition, she stated father would take G.N., L.A.-G., Ju.N. and K.N. with him when he

went to a friend's house where he left them unattended in the car for 30 minutes while he went into the garage, only to then go home behaving strangely. The children reported hearing mother discuss father's drug use, although they had not seen it themselves. Further, father's personality and behavior changed radically about three years earlier, when the domestic violence began. Finally, a friend of fathers confirmed father was using methamphetamine.

Father's primary argument in the trial court was that the allegation of substance abuse as set forth under the section 300, subdivision (b)(1) allegation, was not supported by the record because no one actually saw him doing drugs and no drugs were found by police in the home. Father cites no authority for the proposition that there must be eyewitness to his drug use in order to support a true finding on this allegation.

Father also complains that the social worker never interviewed him, but he had already been arrested when CFS arrived at the home following receipt of the referral and he was still in custody when he appeared at the June 28, 2021, hearing, preventing her from interviewing him due to Covid-19 restrictions while he was in custody. Father had notice of the proceedings and apparently was aware how to contact CFS (the additional information to the court filed on August 27, 2021, reveals father contacted a social worker following his release, where he informed her of an altercation with mother a few weeks before, when he caught her with another man at the residence.) Yet a due diligence declaration filed by CFS reveals that as of October 25, 2021, the social worker

24

had no current address or phone number with which to reach him to notify him of the continued hearing date, much less to conduct an interview.

Nevertheless, despite the covert manner in which father practiced his use of drugs, the children had heard mother talk about his drug use, there was evidence father's personality and behavior underwent a drastic change within the past three years, father's friend had confirmed his use of methamphetamine, and father had missed 7 out of 9 drug tests without contacting the social worker to arrange a more convenient testing schedule. We agree the evidence is not overwhelming, but findings for the purpose of determining jurisdiction need only be established by a preponderance of the evidence. We think Justice Mosk's observation appropriate here: "I would invoke the folk wisdom that if an object looks like a duck, walks like a duck and quacks like a duck, it is likely to be a duck." (*In re Deborah C.* (1981) 30 Cal.3d 125, 141, conc. opn., Mosk, J.) It is indeed fortunate that father was not observed using drugs by the children or maintained drugs in the home where the police might have found them at the time of his arrest. But that does not necessarily mean that there is insufficient evidence to support the allegation, under a preponderance of the evidence standard.

Further, once CFS submitted the reports in support of the allegations at the jurisdiction hearing, the burden of producing evidence shifted to father to refute the allegations. (Evid. Code, §§ 110, 550; Welf. & Inst. Code, § 355, subds. (a), (d); see also *In re Lucero L.* (2000) 22 Cal.4th 1227, 1242 [certain types of hearsay are sufficient to

25

support a jurisdictional finding unless a party raises a timely objection to the admission of specific hearsay evidence contained in a social study].) Father did not do so.

Father also argues that the finding of substance abuse was improper because such an allegation requires testimony by a medical expert. There is authority supporting the position that a finding of substance abuse requires that the parent's use fall within the definition of the disorder described in the DSM-V. (See *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1217-1219 [agreeing that the reasoning of *In re Drake M.* (2012) 211 Cal.App.4th 754, 765-766, was a useful definition but not binding].) In those cases, there was a full contested hearing.

But father did not present the argument in the trial court that this allegation could not be found true without a medical diagnosis, and without objecting to the admission of the reports into evidence, or the lack of evidence that he met the medical diagnosis, he forfeited this issue. "Many dependency cases have held that a parent's failure to object or raise certain issues in the juvenile court prevents the parent from presenting the issue to the appellate court." (*In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1338, and cases there cited.)

What remains is unrefuted information in the social worker's reports which is sufficient to satisfy the preponderance of evidence standard, although we agree it is not overwhelming evidence that father's substance abuse interferes with his ability to provide regular care for the children. However, reversing the finding in the face of so many missed drug tests and his failure to notify CFS of his whereabouts upon his release from

custody in order to submit to an interview regarding the allegations against him or for father to inform CFS of the scheduling issues regarding drug tests, would reward his refusal to cooperate with the Agency for the protection of his children. Further, even if we were to reverse this one allegation, it would not change the outcome. When substance abuse is eliminated from the jurisdictional equation, what is left is the profile of a father who is simply abusive towards his children, requiring removal of custody for their protection.

It is well-settled that if any one of several enumerated statutory bases for jurisdiction is supported by substantial evidence, a reviewing court need not consider whether other alleged statutory bases are also supported by the evidence. (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.) Father has never denied drug use and did not challenge the allegations under section 300, subdivision (b)(1) on any other basis other than the fact no one had personally seen him using drugs. The remaining allegations would still stand and are more than sufficient to support jurisdiction: father physically abused most of the children under his care, neglected to obtain medical treatment for A.S.'s broken finger for which he was responsible, he engaged in domestic violence with mother, which exposed the children to risk of harm, and he did not protect the children against mother's abuse. All of this conduct began within a three year period, when the drug use began, and father never denied drug use. The evidence rises to the level of preponderance of the evidence, which father failed to refute by producing evidence to the

27

contrary. Father's challenges to the substance abuse findings do not require reversal of the judgment.

*3.        Removal of the Children from Father's Custody Was Proper*

In the lower court, father submitted on disposition and agreed to reunification services. He did not posit any argument against removal of custody of the children. Nevertheless, we address the removal order because father challenges the findings supporting jurisdiction and urges us to conclude that the removal order was premised on erroneous findings, requiring reversal. We disagree.

Section 361, subdivision (c), sets out the factors that must be established to justify a removal of custody of children. That section provides in relevant part: "A dependent child shall not be taken from the physical custody of his or her parents, guardian or guardians, or Indian custodian with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence of any of the following circumstances listed in paragraphs (1) to (5), inclusive, and, where it is known or there is reason to know that the child is an Indian child, as defined by Section 224.1, paragraph (6):

(1) There is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's, guardian's, or Indian custodian's physical custody. . . . ." (§ 361, subd. (c)(1).)

28

If the social services agency recommends removal of the child from the home of his parent or guardian, it must prove the detrimental circumstances exist by clear and convincing evidence. (*In re Michael D.* (1996) 51 Cal.App.4th 1074, 1083.) In interpreting section 361, subdivision (b) our Supreme Court explained "[a]t the dispositional hearing, the burden is on the state to prove, by clear and convincing evidence, that removal of the child from the parent's custody is necessary." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 308.)

"Before the court may order a child physically removed from his or her parent, it must find, by clear and convincing evidence, that the child would be at substantial risk of harm if returned home and that there are no reasonable means by which the child can be protected without removal." (§ 361, subd. (c)(1); *In re Cole C.* (2009) 174 Cal.App.4th 900, 917, citing *In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1654.)

"On appeal from a dispositional order removing a child from a parent we apply the substantial evidence standard of review, keeping in mind that the trial court was required to make its order based on the higher standard of clear and convincing evidence." (*In re Ashly F.* (2014) 225 Cal.App.4th 803, 809, citing *In re Noe F.* (2013) 213 Cal.App.4th 358, 367.)

"A removal order is proper if it is based on proof of parental inability to provide proper care for the minor and proof of a potential detriment to the minor if he or she remains with the parent." (*In re Diamond H.* (2000) 82 Cal.App.4th 1127, 1136, citing *In re Jeannette S.* (1979) 94 Cal. App. 3d 52, 60.) "The parent need not be dangerous, and

the minor need not have been actually harmed before removal is appropriate." (*In re Diamond H., supra,* at p. 1136.) The focus of the statute is on averting harm to the child. (*In re Jamie M.* (1982) 134 Cal.App.3d 530, 536, citing *In re B.G.* (1974) 11 Cal.3d 679, 699.)

In the present case there was uncontradicted evidence that father had physically abused all but three children in the household. Further, in the months leading to the jurisdictional-dispositional hearing, father engaged in no services, other than visiting with the children. His visits with the children are the only positives in the assessment of father's parenting in a record replete with evidence of his violence towards family members. Nevertheless, aside from admitting to the police at the time of his arrest that he may have "crossed the line", he persisted in his denials that he abused his children and attempted to justify his violence to the children by attributing his lack of control to C.N.'s and A.S.'s ADHD and the other children's disobedience.

"In determining whether a child may be safely maintained in the parent's physical custody, the juvenile court may consider the parent's past conduct and current circumstances, and the parent's response to the conditions that gave rise to juvenile court intervention." (*In re D.B.* (2018) 26 Cal.App.5th 320, 332, citing *In re Cole C.* (2009) 174 Cal.App.4th 900, 917.) In this respect, a court may consider a parent's refusal to take responsibility for his abusive conduct. (See, *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["One cannot correct a problem one fails to acknowledge."].)

Given that father continuously engaged in physical abuse of his children and participated in domestic abuse with mother, which could not be abated until the police were called and CFS intervened, coupled with father's attempts to minimize and excuse his violence by blaming the children's behavior, the court could properly conclude by clear and convincing evidence that the abuse would continue in the future unless the children were removed. Certainly, father makes no cogent argument the pattern of child abuse he has exhibited was a one-time or situational episode that is unlikely to recur. (See, *In re A.E.* (2014) 228 Cal.App.4th 820, 826 ["Evidence of past abuse, standing alone, does not meet the clear and convincing standard of proof required to justify her removal from Father's physical custody."], citing *In re Rocco M.* (1991) 1 Cal.App.4th 814, 824].)

The children lived in a house of horrors that required law enforcement and social services to intervene for the protection of the children. The true findings on the allegations, having been supported by substantial evidence, coupled with the risk the abuse was likely to recur, satisfied the necessary findings under section 361, subdivision (c).

To the extent father is opposed to the proposed outpatient substance abuse treatment program and drug testing, we remind father that at the hearing, he agreed to reunification services, including drug testing, but did request that the testing be on demand instead of random to accommodate his schedule. In all other respects, he agreed

31

to services.  He has forfeited any challenge to the disposition order requiring that he participate in substance abuse treatment.

### DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ _____

P. J.

We concur:

McKINSTER _____

J.

SLOUGH _____

J.